21-2112. Thank you. Good morning, Your Honors. May it please the Court, I represent Mr. Barton on appeal from his conviction. In the trial court, the district court admitted against Mr. Barton as direct evidence, sua sponte, out-of-court anonymous accusations of three men that Barton had threatened them with a gun. The men's behavior, including their disappearance from the scene, cast doubt on the reliability of the accusations. The government had not sought admission of this evidence for its truth. The Court made an off-the-cuff ruling in the middle of trial. Then the Court gave an uncalled witness charge, telling the jury that it could not consider in any way the absence of any witnesses from trial, nor consider anything they might have said if called and cross-examined. The combined rulings not only saddled the defense with accusations that could not be challenged by cross-examination, but instructed the jury to basically accept these at face value. Can I ask a question? Yes. Let's say that we were to agree with you with respect to the three witnesses and the admission of those statements at trial, so that we assigned error to that. Why, given all of the other evidence, DNA evidence, Ms. Daniels, the police officers themselves, the people backing up when the white van arrives, why, in view of all of that evidence, wouldn't the error be harmless? Well, Your Honor, all of that, each piece of evidence, each prong of the government's case, had problems, big problems. Do you challenge those other problems on appeal? I argue that the evidence was close enough that this error could not have been harmless. First of all But do you challenge the, what you describe as problems, do you assign, do you ask us to assign error to those problems? No, Your Honor. What I'm making is a factual argument that the, if you look at the evidence piece by piece, actually examined, the way the jury did, by the way, because the jury did focus right in on these problems. First, with respect to Witness Daniels, the problems with her story was, although she was eager to cooperate with the police at the time and gave a full report at the time, she never mentioned the key facts that she suddenly mentioned at trial, which was that she saw an arm come out the window as the van passed and threw something out. At the time she was interviewed, she said only she saw the van speed by with the police and chase and heard a loud bang. Those are two very different stories. The second story is very much embellished. Second, a big problem She was false examined about that. She was, but the jury focused on her testimony. The jury could have believed her. The jury could have believed that the whole thing was true, or the jury could have believed that she embellished in her eagerness to make the case better at trial. And only the first two facts were true. But was the gun that was found, that she found and that she photographed, the same gun that had the DNA of Mr. Barton on it? Yes, but the DNA was also problematic. And if I could just finish my answer to the problem with Ms. Daniels' testimony is another huge flaw. The police followed close behind the van, and you can see this in the video. The police take off immediately after the van. The gun was found in the first block of Dumont, in the first block of that chase. The police said they watched that van closely, so closely that they were watching to see whether the defendant put on signals or not. They never saw a hand come out or anything thrown. So that was a huge problem with Ms. Daniels' testimony. Now, to get to the DNA, Your Honor, a minuscule amount of DNA was found, so minuscule that it could have been transferred. It was not the kind of amount of DNA that would be likely to be left if someone grabbed it with a sweaty hand. What are the odds? What are the odds? That the gun that Ms. Daniels finds, and whether or not she sees an arm, she finds the gun. You're not challenging that. And that that gun has DNA from Mr. Barton. Well, the odds, these are the odds. Mr. Barton had just been tackled, handcuffed, and full body searched by Officer Campana. Officer Campana then found the gun, and he reported in a police report that he recovered the gun from the ground. Now, at trial, he denied that he ever picked it up. He said that he just stood there and watched the gun, which he was doing other things at the time also, talking to the witness, looking at the car. It's unlikely that he would just leave the gun sitting there, doing nothing with it to make sure it was safe. Did Ms. Daniels say that she didn't see any of the police officers pick up the gun? She did, but she was busy also. She was busy moving her car back to where it was. She was restaging the crime scene for the officers. She had moved her car, and she then went to move it back, and she was doing other things, taking other photographs. So she acknowledged on cross that she wasn't watching them all the time. So he was cross-examined with his prior statement in his sworn complaint that he had recovered the gun from the ground, and the jury was laser-focused on that statement in deliberation. So would it be fair to say that, in your view, had the district court excluded the utterances that are the topic of the Confrontation Clause challenge, that you would have a valid, and the jury had nonetheless convicted you, you would believe you'd have a valid sufficiency argument because of the flaws in the remaining evidence, but because they were admitted, that gave a coherence to the otherwise weak evidence that was pivotal in the jury's conviction, something like that? Well, what I'm saying is, yes, without that evidence, without the only direct evidence that he had the gun, that the evidence would have been extremely weak. I'm not saying necessarily that it would have been insufficient, but that is not required to show that it was not harmless error. The only question is whether this was likely to have affected the jury's verdict, not whether there was a barely legally sufficient case. I'm sorry. I was going to shift to this one with this instruction. The instruction, yes. So go ahead. So on top of this, the Court then gave a jury instruction that the jury should not consider the absence of any of the uncalled witnesses at trial. Now, ordinarily, this Court does not reverse for that charge. It has kind of disapproved it and suggested that in a case where the witnesses are equally available, either no charge should be given or the charge should be given that the jury could draw any inferences for either side. But here, it was completely inappropriate and highly prejudicial for the Court to do it. I want to say that when the – and this is a genuine question – when the defense counsel during summation emphasized the absence of those three witnesses. And initially, the district court judge, if I recall correctly, had refrained from giving the instruction, but it was only after the summation from defense counsel that the district court judge changed his mind. Well, Your Honor, the – Is that accurate? Is that an accurate suggestion? That is accurate, but the defense was totally within its legitimate defense function and role if it had not challenged the absence of those witnesses. It would be incompetent. The fact that three anonymous accusations came in and the defense is arguing, there's a problem with these anonymous accusations. These guys disappeared. They didn't even show up. They didn't even stick around and give their names. That is a totally legitimate argument. And you didn't see them testify. Pardon? And you did not see them testify. Yes. Yes. Yes. And so what the judge – that's a totally valid defense argument and a ground for finding these allegations unreliable and for the jury to disregard them. But then the judge came in and told the jury to disregard that, that they should not consider their absence. So it undermined a legitimate, valid defense argument. In fact, the only argument it had, really, against these –  Finish that point. Go ahead. That's all, Your Honor. The government makes an argument that the instruction in context was actually given not about the three witnesses who went to the police and said he has a gun, but about the street witnesses who could have testified regarding the throwing out of the gun. Do you agree that's right and does it matter? It doesn't matter. I don't know if it's right. Maybe – I think that – it looks like, reading the transcript, that's why the government asked for it. Because, again, the government didn't even ask for these anonymous accusations to come in. For the truth. For the truth. To come in. Right. But they were going to tell an area. Right. So I think that's probably the reason why the government asked for it. It was focused on the other witnesses, the bystanders who were also not called. But the Court didn't distinguish at all. The Court said for any witness who's been identified here, you can't consider their absence in any way. It should not affect your judgment in any way. The jury had no way of knowing that this – or even thinking – or even – we don't know what the judge was thinking. The judge probably did have in mind the three anonymous witnesses. But the Court also said that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. So we tried to balance that out. In any event, I think we've got the – your position. You've got some time for rebuttal. Two minutes. We'll hear from the government. Okay. Thank you so much. Thank you. And I should let counsel know that you are free, but you do not have to take off your mask when you're at the podium. When you return to your seat, you should put on your mask. Thank you, Your Honor. Thank you. Good morning, and may it please the Court. My name is Turner Buford, and I represent the United States in this appeal. I also represented the United States in the proceedings before the district court, including the trial. With respect to the admission of the statements, our view is that the district court was comfortably within its discretion to admit them for the truth. When you look at the cases and similar situations for either present sense impressions or excited utterances that are given in real time to the police identifying an imminent threat, a person with a gun, those statements in those cases are frequently admitted in circumstances similar to these. And therefore, the district court's decision, I think, is comfortably within the mainstream of those cases. This is a situation in which the district court did admit them sua sponte, but just the fact that the government hadn't necessarily asked for them to be admitted for the truth. So the government, and I say this as a former government lawyer, didn't necessarily at the time view that the present sense impression or excited utterance or any other exception to the rule applied and hadn't anticipated getting those statements in through the police officers? Is that fair? I wouldn't go that far, Your Honor. How far did you go? From our perspective, these statements, the utility of them was always to sort of play defense against the notion that the police had acted rashly or impetuously with respect to their treatment of the defendant. So it's not going to be an affirmative use. It's going to be a depending on what defense counsel did. That's correct, Your Honor. And I think even after the court admitted them for their truth, it's fair to say that the government didn't suddenly shift them forward to be the centerpiece of our case. And I think in closing argument, it's not as though we offered them to the jury as an independent basis for conviction. In fact, in closing, I think they're really only referenced once. And the statements that are referenced are from that second encounter, which happens in real time where the police are present there with the three men and the defendant in the van. And the argument was everyone is within earshot of the three men as they say, that's him, that's him, he has a gun. And the argument we made in closing to the jury was the defendant himself would have been in a position to hear that statement. And it goes to consciousness of guilt that he immediately fled, knowing that the police were likely to ask questions, potentially search him. And that's a sort of not-for-the-truth type argument for those statements. And is it the government's position that if we find no abuse of discretion, and obviously the district court has a wide range within which to act on hearsay rulings, that there can be no confrontation clause violation? In our view, and I don't think it's necessarily the case that anything that qualifies as a present sense impression or an excited utterance necessarily avoids a confrontation clause. But I think in this particular case, all of the reasons why the statements satisfy those. So you're saying there is a gap? There potentially is a gap. Particularly on review for abuse of discretion, if you had a series of discretionary rulings that were at the outside margin, for example, of the district court's discretion, that you could end up with a situation at the end that constitutes a confrontation clause violation potentially? I think that's right, Your Honor. I think you might be able to construct theoretically a situation where a statement that would otherwise be admissible for its truth because it satisfies the criteria for a present sense impression or an excited utterance would somehow, because I don't think the test is exactly the same necessarily, create a confrontation clause issue. But I don't think that situation exists in this case. I would think that the vast majority of cases where the criteria are met for a present sense impression or excited utterance are cases where it's not testimonial. I agree, Your Honor. And I think that's certainly true in the cases we cite in our brief where the challenges are almost always raised in tandem. So the principal argument or the first argument is these don't satisfy the present sense impression or excited utterance criteria. And then the second argument is confrontation clause. And we have never or I haven't seen a case where the court concludes it's not hearsay but there is a confrontation clause problem in a situation like this. Didn't Justice Scalia discuss the differences in the common law of the evidentiary exceptions to hearsay and the confrontation clause and suggested that they weren't exactly equivalent, right? I think that's right, Your Honor. And again, I think you could conceive a situation where you might have one but not the other, but I don't think that's this case. Counsel, in the defense summation, I'm looking at 114 of the appendix, talking about the three witnesses. Defense counsel says, does that make sense? Is that behavior that you showed towards a man who you think has a gun? These guys aren't victims. You heard from Detective McCarthy. They never called 911. What did they do? They disappeared. Why? They were the perpetrators. No objection to that. And not objectionable, right? No. This is going to the sort of uncalled witness charge. I think that the defense was able to make all of the arguments that they wanted to make. Right. And so that argument, that part of the defense is jury, make something of the fact that they're not here. That's essentially the way that the defense could impeach that testimony, since they weren't here, draw an inference jury from their absence to disbelieve that out-of-court statement. That's an available inference, isn't it? I think that's right, Your Honor. And so didn't the uncalled witness instruction tell the jury you may not draw that inference? I don't know that that's right, Your Honor, because I think when you read the instruction in toto, what the district court is telling the jurors is just because a witness didn't testify here, you shouldn't assume that you know what they would say if they testified. Right. But the end of the instruction is you may draw no inference from their absence. But what you, I think, rightly concede was an available inference from their absence essentially was what defense counsel was attempting to do to impeach that out-of-court statement. But I think the absence that the defense is arguing there is not that they're absent necessarily from the trial, but that they absented themselves from the scene of the incident. And therefore, they weren't, you could infer from that that their behavior was suspicious, that they were the ones who had been the aggressors against the defense. And I think all of those arguments and inferences survive this instruction, which is you shouldn't. Let me ask you, if I think it is an available inference that was being made here and that the instruction, assuming the jury followed it as we must, takes away that available inference, what's the evaluation of error there? So in that situation, Your Honor, again, I think that the jury instruction doesn't necessarily mean that the verdict is compromised in that situation. So, again, we read the instruction as saying don't infer what these people may have testified about if they had been called in this particular trial to testify. And to be clear, the prejudice goes a little bit both ways, because one of the things that these people may have testified about if they had been called at trial was we saw the defendant with a gun and he threatened us with it. So the — You asked for the charge, though. No, I understand, Your Honor. I'm not sure you can invoke that as a — But I guess it goes to the question of how do you — if I think that's error, how do I evaluate that error? Your Honor, I think you would consider whether the error in the jury instruction sort of necessarily tainted the verdict. Was it prejudicial? Right, exactly. And I think given the sort of totality of the evidence, we would still have an argument that — Am I not correct that these witnesses were equally unavailable to both sides? Your Honor, there's no dispute. I think throughout the trial, the defense made very clear that the police officers were unsuccessful in identifying who these men were, notwithstanding the fact that they did go back and canvas for them. The record suggested to me that, I mean, there was an ongoing dispute or argument, which could have just arisen, I suppose. But I had kind of presumed until I saw that it had been kind of agreed otherwise that the defendant would be able to identify them and knew them, because they resumed their hostile encounter. Yes, Your Honor. There was mention of a girl and so on. It's certainly true that law enforcement has access to sort of resources that they could potentially use to try to find people. But I don't know in this particular case that there was some material discrepancy in the availability of these witnesses when it's undisputed that the police officers never got their names, had only met them that one time, and that they didn't wait around indefinitely at that intersection for police to arrive and continue. Isn't that a way to, as you answered Judge Carney's question, isn't that a way to evaluate the instruction? In other words, that they were equally unavailable, or I guess the Congress was equally available? I think that's right, Judge. And I also think that in this particular case, the instruction was, in our view, given more with respect to the witnesses on Dumont Avenue, where, to return to the earlier point, the defense was arguing, in our view more explicitly, those witnesses didn't appear in this trial. But there's no way for the jury to know that this instruction wouldn't apply with respect to the three witnesses who gave out-of-court testimony. I think that's right, Your Honor. What I was trying to say was the defense in closing, I think, framed that argument with respect to those witnesses differently than I think it framed its argument with respect to the three men, which is to say, you should blame the government for the fact that those witnesses on Dumont Avenue didn't testify in this trial. Whereas I think with respect to the three men, the argument was more, look at how suspicious their behavior was. They were the aggressors. And again, all of those arguments, I think, survive the instruction, which is, in my view, directed more towards what happened in this trial, who showed up to actually testify here. Can I ask, so typically we review de novo instructions. There are cases that say the application, the invocation of this instruction is reviewed for an abuse of discretion. I looked at those cases. I can't, I couldn't find, maybe the government, the context in which the missing witness is the out-of-court declaring, which seems to me does, even if not testimonial, implicate confrontation clause issues. But here, again, it seems like what the defense is trying to do is sort of their best version of impeaching that out-of-court statement. And I think, I'm not sure whether the question of the appropriateness of an instruction in that context is necessarily subject to abuse of discretion versus de novo. I suppose it's a long windup to the question, are you aware of other cases like this where this instruction is given about an unavailable witness whose testimony is being offered for the truth, whose out-of-court testimony is being offered for the truth? I don't. As I sit here today, I'm not aware of a case like that, Your Honor. I do know that, again, this ---- I'm sure that this is not a unicorn. Well, Your Honor, we would, I guess, request the opportunity potentially to present to the court such a case if we were able to locate one. I do know that, to pick up where Your Honor left off, in terms of jury instructions, this situation where you have equally unavailable or available witnesses, under the law, and the case in our brief, I think, is the Pierce case, the district court generally has sort of three options here, one of which is to sort of let the parties duke it out in summations, another is to give the instruction the district court gave here, which is sort of equally unavailable or available, no inferences to be drawn, or three is to allow the jury to draw adverse inferences against either side. And I think the court has said that sort of those are the three options, and which one to pick is, I think, sort of within the district court's discretion, notwithstanding this court's usual de novo review of jury instructions. And I think here the fact that these witnesses, the ones on Dumont Avenue, were equally available, the three men were equally unavailable, means that the district court's instruction was properly given on the basis of the facts. Would you submit any letter by Monday, and then I'll give counsel for Mr. Barton until Tuesday to respond? Is that fair? Yes, Your Honor. Wonderful. Thank you. Thank you, Your Honor. I'll be brief. I think Judge Nathan's questions hit the issue on the head, that despite the general discretion of the court to give a charge like this for ordinary uncalled witnesses, these were not ordinary uncalled witnesses. These were witnesses whose anonymous, uncalled witnesses, disappeared witnesses whose anonymous allegations were admitted. And I don't think he So you really focused on the three witnesses who talked to the police officers? Yes. Initially. That's what we're complaining about. We're not complaining about the uncalled witness with respect to the bystanders. And responding to my adversary's argument that this, that really this defense didn't rely on their absence, the defense did. Not only did he argue about their disappearance at the scene, they were the perpetrators. You haven't heard from them. But at page 1A116 in the appendix, consider the absence of testimony from those watching and those who were guilty. He argued that they were guilty, that the three anonymous witnesses were actually the perpetrators, that they had beaten up Mr. Barton two blocks away. By the way, that's another issue I want to just stress, that they had beaten him up and that they were afraid that he was going to call the police. And so when they saw the police car, they had been making up a story along the way. By the way, they walked two full blocks. Okay. So the government cites a lot of cases where there's a 911 call involved. Something happens right away as soon as they can pick up the phone or get to the phone. The witness calls 911. What's depicted in the video? And was the video presented to the jury? Yes. In the video, and it's been submitted to the court. Yes. What's depicted in the video is the young, the three young men, who were, by the way, in their 20s and Mr. Barton was in their 40s and they'd just beaten him up, walking over, sauntering really, over to the corner and talking briefly to the police and then sauntering away. And then the police called them back. And what they testified to was that they asked them to get in the car and go with them and find the man in the van. And they refused. And they walked away again. Then they go, they're still standing around just walking down the street when Mr. Barton's van comes back and they start yelling at him. Now, there's no audio on the tape, but the police testify that they were screaming and yelling and yelling back and forth. So there was a big yelling fight going on. More than a full minute later when the police came back, they were still there. So even though they had moved slightly off camera, they were still mixing it up with Mr. Barton, seemingly not afraid at all that he had a gun. And the video doesn't show how long between their initial encounter with Mr. Barton and their interaction with the police. They had walked two blocks, something like that? Yes, they did walk two blocks. And that is in the appendix. But the van was not visible to the police at that time. Is that right? Right. The van was two full blocks away, one long block and one short block. Officer Alex testified. We took a right on Straus. They were at the corner of Straus and Dumont. And the map, by the way, is in the appendix. At government's appendix, GA 215, we made a right on Straus, and then we made a right on Livonia toward Saratoga Avenue, and we just stopped there at that intersection. That's where they say the event was. So it was two full blocks that these men had walked with full enough time to make up a story and say he's going to report us, we better report him. That is precisely opposite of what the present sentence impression exception allows. It's a statement made immediately, so immediate that it can't be fabricated. Same with excited utterance. Under the stress of a startling event. If you look at the video, these young men were under no stress. Thank you very much. Thank you. We'll reserve a decision.